The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TREVOR HASTINGS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MICROSOFT CORPORATION,

Defendant.

No. 2:26-cv-02537-JLR

**DEFENDANT MICROSOFT CORPORATION'S MOTION TO COMPEL ARBITRATION AND STAY CASE**

NOTED ON MOTION CALENDAR: October 2, 2026[1]

ORAL ARGUMENT REQUESTED

[1] Pursuant to the Local Rules and the Court's July 29, 2026 Order (Dkt. 18).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 2

A. Plaintiff Purchases an Xbox Console. ........ 2

B. Plaintiff Accepts Microsoft's Terms. ........ 2

1. Plaintiff Agrees to the Warranty & Agreement. ........ 2

2. Plaintiff Agrees to the Microsoft Services Agreement. ........ 4

C. Plaintiff Filed a Lawsuit. ........ 7

III. ARGUMENT ........ 8

A. Plaintiff Agreed to Arbitrate Disputes with Microsoft. ........ 8

1. Plaintiff Agreed to the Warranty & Agreement. ........ 9

2. Plaintiff Agreed to the Microsoft Services Agreement. ........ 12

B. Plaintiff's Claims Fall Within the Scope of the Arbitration Agreements. ........ 14

C. The Court Should Stay This Action Pending Arbitration. ........ 17

IV. CONCLUSION ........ 17




Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## TABLE OF AUTHORITIES

**Pages(s)**

**Federal Cases**

*Amirhamzeh v. Wells Fargo Bank, N.A.*,
2014 WL 12610227 (N.D. Cal. 2014) ....................16

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)....................15, 16

*Baird v. Charter Commc'ns, Inc.*,
2020 WL 11626081 (C.D. Cal. 2020)....................10, 11

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....................9

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) ....................1, 8

*Columbia Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union, No. 20-35037*,
23 F.4th 836 (9th Cir. 2022) ....................16

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018)....................8

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995)....................8, 12

*Graf v. Match.com, LLC*,
2015 WL 4263957 (C.D. Cal. 2015)....................13

*Harbers v. Eddie Bauer, LLC*,
2019 WL 6130822 (W.D. Wash. 2019)....................12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)....................8

*Hill v. Gateway 2000, Inc.*,
105 F.3d 1147 (7th Cir. 1997) ....................9, 10

*In re Holl*,
925 F.3d 1076 (9th Cir. 2019) ....................11

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
298 F. Supp. 3d 1285 (N.D. Cal. 2018) ....................10, 11



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*In re Uber Techs., Inc.*,
2019 WL 6317770 (C.D. Cal. 2019)....13

*J.A. v. Microsoft Corp.*,
2021 WL 1723454, *report & recommendation adopted*, 2021 WL 1720961 (W.D. Wash. 2021)....2, 9, 12, 13

*Kwan v. Clearwire Corp.*,
2012 WL 32380 (W.D. Wash. 2012)....10

*Lombardi v. DirecTV, Inc.*,
549 F. App'x 617 (9th Cir. 2013), *rev'd on other grounds*, 546 F. App'x 715 (9th Cir. 2013)....11

*McCray v. Microsoft Corp.*,
2026 WL 83990 (W.D. Wash. 2026)....2, 12, 14, 16

*Mendoza v. Microsoft Inc.*,
2014 WL 4540225 (W.D. Wash. 2014)....16

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)....13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....8

*Norcia v. Samsung Telecomms. Am., LLC*,
845 F.3d 1279 (9th Cir. 2017)....10, 11

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023)....8, 12

*Perez v. Discover Bank*,
74 F.4th 1003 (9th Cir. 2023)....8

*Perry v. Thomas*,
482 U.S. 483 (1987)....8

*Romanov v. Microsoft Corp*,
2021 WL 3486938 (D.N.J. 2021)....2, 13

*Sadlock v. Walt Disney Co.*,
2023 WL 4869245 (N.D. Cal. 2023)....13

*Saeedy v. Microsoft Corp.*,
757 F. Supp. 3d 1172 (W.D. Wash. 2024)....2, 13, 16

*Schmidt v. Samsung Elecs. Am., Inc.*,
2017 WL 2289035 (W.D. Wash. 2017)....10, 11



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ....................16

*Smith v. Spizzirri*,
601 U.S. 472 (2024)....................17

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) ....................13

*Talyancich v. Microsoft Corp.*,
2012 WL 1563884 (C.D. Cal. 2012)....................13

*Walsh v. Microsoft Corp.*,
2014 WL 4168479 (W.D. Wash. 2014)....................16

*West v. Uber Techs.*,
2018 WL 5848903 (C.D. Cal. 2018)....................13

*Wheeler v. LG Elecs. USA, Inc.*,
2024 WL 51353 (E.D. Cal. 2024)....................10

**State Cases**

*Ramos v. Superior Ct.*,
28 Cal. App. 5th 1042 (2018) ....................16

**Federal Statutes**

9 U.S.C. § 2....................1, 8

9 U.S.C. § 3....................17



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## I. INTRODUCTION

Plaintiff Trevor Hastings ("Plaintiff") alleges that Defendant Microsoft Corporation ("Microsoft") increased the price of an Xbox video game console he purchased to offset tariffs that were later deemed unlawful. He asserts claims for unjust enrichment, money had and received, and declaratory relief on the theory that Microsoft improperly retained refunds of the tariffs. Plaintiff does not allege that he received any less than what he was promised for the agreed price; nor does his complaint dispute that Xbox prices have changed over time for a variety of reasons having nothing to do with tariffs. But, for present purposes, it is enough that Plaintiff seeks to litigate in court a dispute he agreed to arbitrate.

The Federal Arbitration Act requires courts to enforce written arbitration agreements according to their terms. 9 U.S.C. § 2. The Court need only determine "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023). Here, both requirements are satisfied twice over.[2]

*First*, Plaintiff agreed to arbitration through two separate contracts relating to his Xbox. Plaintiff agreed to the *Warranty & Agreement* ("*W&A*") referenced both on and in the Xbox packaging by purchasing and using his Xbox console. Plaintiff also agreed to the *Microsoft Services Agreement* ("*MSA*") as a condition of creating and continuing to use his Xbox Live services on his Xbox console.

*Second*, both broad arbitration clauses cover the claims alleged in his complaint. Plaintiff's claims arise directly from the alleged price and purchase transaction for his Xbox console and from his ongoing relationship with Microsoft through his Xbox Live account—subjects covered by the arbitration provisions in the W&A and MSA.

Because valid arbitration agreements exist and apply to Plaintiff's claims, the Court should compel Plaintiff to arbitrate on an individual basis and stay this action pending

[2] Microsoft reserves the right to separately move to compel arbitration with respect to any additional agreements that may exist between the parties to the extent discovery reveals that they are applicable.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

arbitration—as this Court has done consistently. *See J.A. v. Microsoft Corp.*, 2021 WL 1723454, *10 (enforcing arbitration agreement under substantially identical Warranty Agreement and Microsoft Services Agreement for Xbox controllers), *report & recommendation adopted*, 2021 WL 1720961 (W.D. Wash. 2021); *see also McCray v. Microsoft Corp.*, 2026 WL 83990, *3 (W.D. Wash. 2026) (enforcing arbitration under substantially identical Microsoft Services Agreement); *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1201–02 (W.D. Wash. 2024) (accord); *see also Romanov v. Microsoft Corp*, 2021 WL 3486938, *1–2 (D.N.J. 2021) (accord).

## II. STATEMENT OF FACTS

### A. Plaintiff Purchases an Xbox Console.

Plaintiff Trevor Hastings, a California resident, asserts that, beginning in "roughly February 2025," the United States government imposed tariffs on imports from multiple countries, which the Supreme Court later found to be unlawful. Dkt. 1-8, First Amended Compl. ("FAC") ¶¶ 2, 17. He alleges that he bought an Xbox console during this time period, and purportedly paid a higher price as a result of the tariffs. *Id.* ¶ 47; *see also id.* ¶ 49 (defining "Class Period" as the time "in which Microsoft's prices were inflated at least in part due to the Tariffs").

### B. Plaintiff Accepts Microsoft's Terms.

Plaintiff entered into at least two separate agreements with Microsoft. As detailed below, Plaintiff's Xbox console was packaged with a product guide informing him of the requirements of the W&A. And Plaintiff used an Xbox Live account—which required assent to the MSA.

#### 1. Plaintiff Agrees to the Warranty & Agreement.

Consumers agree to arbitrate when they purchase, use, or retain any Xbox console. Microsoft includes an XBOX Console Product Guide, Limited Warranty & Agreement (the "Product Guide") in the box of each Xbox console informing the consumer that by using the product, the consumer agrees to the W&A. That agreement binds consumers to arbitrate disputes with Microsoft with limited exceptions not applicable here.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

All Xbox consoles manufactured since 2017, which includes Plaintiff's Xbox, have contained a copy of the Product Guide within the box. Declaration of Michael Zuberbier ¶ 4. The Product Guide packaged with Plaintiff's Xbox provides notice of a binding arbitration clause in large, conspicuous font on the first page of the text:

> **YOU MUST ACCEPT LIMITED HARDWARE WARRANTY & AGREEMENT AND MICROSOFT SERVICES AGREEMENT (BOTH WITH BINDING ARBITRATION AND CLASS ACTION WAIVER IN THE U.S.) AND SOFTWARE LICENSE TERMS**

*Id.* & Ex. 1 at 2. On that same page, the Product Guide notifies the user that the user agrees to the Manufacturer's Limited Hardware Warranty & Agreement ("W&A") by purchasing or using the Xbox console, directs the user to the URL where the W&A can be read in full, and summarizes the scope and effect of the arbitration clause:

> By purchasing or using your Microsoft Product, you agree to: … Manufacturer's Limited Hardware Warranty & Agreement at support.microsoft.com/warranty. Please read the summary starting on page 7. **If you live in … the United States, please read the binding arbitration clause and class action waiver at aka.ms/hw-warr-arbitration-523 and the summary starting on page 7. It affects how disputes concerning your Microsoft Product, its price, advertising, marketing, communications, your purchase transaction, billing, or the Manufacturer's Limited Hardware Warranty & Agreement are resolved.**

*Id*. That same page instructs users to "read these agreements" and to not set up the account and to return the Xbox console for a refund "[i]f you do not accept them[.]" *Id.* The Product Guide also summarizes the key terms, including that disputes "will be resolved only by individual binding arbitration under the Federal Arbitration Act[.]" *Id.* at 7–8 (emphasis omitted).

Since at least 2017, the packaging on the outside of an Xbox console box has consistently included a notice requiring the user to accept the W&A, and directing users to the URL where they can access the full text of the terms. The following notice appeared on the packaging for Plaintiff's Xbox:



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

> **IMPORTANT!** You must accept the Xbox Software License Terms (xbox.com/slt), Microsoft Services Agreement (microsoft.com/msa), and Warranty & Agreement (xbox.com/warranty). Features, online services, system requirements, and settings may vary by device, region, may require paid subscription(s), and are subject to change or retirement over time.

*Id.* ¶ 5 & Exs. 2, 3. An identical or substantially similar notice appeared on all other Xboxes purchased since 2017. *Id.* ¶ 5.

The W&A, available at the link identified in the Product Guide and on the Xbox console packaging (xbox.com/warranty and support.microsoft.com/warranty), applies to Xboxes purchased on or after October 1, 2024. *Id.* ¶ 6; Ex. 4. The first page of the W&A reiterates that users agree to it "by purchasing or using your Microsoft product" and provides notice of the arbitration clause:

> **CONSENT TO BINDING ARBITRATION AND CLASS ACTION WAIVER.** IF YOU LIVE IN (OR ARE A BUSINESS WITH YOUR PRINCIPAL PLACE OF BUSINESS IN) THE UNITED STATES, PLEASE READ THE BINDING ARBITRATION CLAUSE AND CLASS ACTION WAIVER IN SECTION 11. IT AFFECTS HOW DISPUTES CONCERNING YOUR MICROSOFT PRODUCT, ITS PRICE, MARKETING, OR COMMUNICATIONS, YOUR PURCHASE TRANSACTION, BILLING, OR THIS WARRANTY & AGREEMENT ARE RESOLVED.

Ex. 4 at 1.

The arbitration clause provides that the parties agree to "binding individual arbitration before the American Arbitration Association ('AAA') under the Federal Arbitration Act ('FAA'), and not to sue in court in front of a judge or jury." *Id.* § 11 (emphasis omitted). The arbitration clause "is as broad as it can be" including disputes regarding the "price" or "purchase transaction" of an Xbox. *Id.*

**2. Plaintiff Agrees to the Microsoft Services Agreement.**

Microsoft also offers access to Xbox Live, an online interactive video game and entertainment service for use with its Xbox consoles—subject to an arbitration agreement. Declaration of Juliamarie Abbott ¶¶ 2–7; *id.* Ex. 3. Microsoft's records confirm that an Xbox



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Live account associated with Plaintiff's email address and registered to a customer named Trevor Hastings was first created in 2007. *Id.* ¶ 4.

When Plaintiff created his Xbox Live account, he was required to agree to the Xbox Live Terms of Use ("Xbox TOU"), which governed the relationship between Microsoft and Xbox Live users at the time. *Id.* ¶ 5. Users could accept the Xbox TOU via their Xbox console or their personal computer. *Id*. On the Xbox console, the subscriber was required to click "Accept" on a screen that displayed the Xbox TOU. *Id*. In this way, the subscriber had the opportunity to review the full Xbox TOU before deciding whether to click "Accept." *Id*. Similarly, subscribers who accepted via their personal computer were required to check a box next to the text "I accept the Xbox Live Terms of Use agreement" *and* click "I Accept" on a screen displaying the Xbox TOU. *Id*. Users could not access Xbox Live unless they accepted the Xbox TOU through one of these media. *Id*.

The Xbox TOU in effect when Plaintiff created his Xbox Live account notified users Microsoft could change the terms of the agreement with 30 days' notice and that if users did not agree to the changes, they needed to cancel their use of the service before the change took place. *Id.* ¶ 5 & Ex. 1 § 15. Otherwise, the service would continue under the changed contract. *Id*. When Microsoft released new versions of the Xbox TOU, existing users automatically were required to accept the new Xbox TOU when they next logged into Xbox Live in a substantially similar manner. *Id.* ¶¶ 5–6. Again, users could not access Xbox Live without agreeing to updates. *Id*.

In December 2011, Microsoft updated the Xbox TOU to add a binding arbitration clause. Abbott Decl. ¶ 6, Ex. 2. As usual, Xbox Live users were notified of the updated terms and required to agree via their personal computer or Xbox console in order to continue accessing the Xbox Live service. *Id.* ¶ 6. Further, bold, capitalized language at the top of the updated Xbox TOU alerted users that the new terms "**CONTAIN A BINDING ARBITRATION CLAUSE AND CLASS ACTION WAIVER**" and instructing them to "**PLEASE READ**" the arbitration clause as it "**AFFECT[S] YOUR RIGHTS CONCERNING THE RESOLUTION OF ANY**



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**'DISPUTE' … BETWEEN YOU AND MICROSOFT**." *Id*. Ex. 2 at 1. Every version of the Xbox TOU after December 2011 contained a materially identical arbitration agreement and class action waiver. *Id.* ¶ 6.

Effective August 1, 2015, the MSA replaced the Xbox TOU as the agreement governing the use of Xbox Live and Xbox Live accounts. Abbott Decl. ¶ 7, Ex. 3. Xbox Live subscribers could not access or use the Xbox Live service after August 1, 2015, unless and until they first logged into their accounts and affirmatively accepted the MSA. *Id.* ¶¶ 7–8. Xbox Live subscribers could agree to the MSA either through their Xbox consoles or their personal computers. *Id.* at ¶ 7. Plaintiff would not have been able to continue using his Xbox account—created in 2007—unless he accepted the MSA both when the MSA replaced the Xbox TOU and at each regular update since. *Id.* ¶ 8.

Microsoft periodically updates and revises the MSA. Declaration of Adam Steenwyk ¶ 5 & Exs. 8–16. When it does so, Microsoft notifies users, including Xbox Live users, who agreed to the earlier version of the MSA of those updates through email and pop-up notices (also known as "interrupt" notices), and gives the user an opportunity to opt out of any changes. *Id.* Since February 2025, two versions of the MSA have governed. The MSA was updated in September 2024, effective September 30, 2024. *Id.* ¶ 5(a)-(b). Microsoft sent out notice emails between August 8, 2024 and September 10, 2024. *Id.* ¶ 5(b), Ex. 2. The MSA was updated again in September 2025, and Microsoft sent out email notices between August 4, 2025, and September 5, 2025. *Id.* ¶ 5(b), Ex. 1. The emails sent out for the September 2024 MSA and the September 2025 MSA update both included a link to the new version of the MSA and informed users: "If you continue to use our products and services [defined to include Xbox Live], on or after" the date the new MSA took effect, "you are agreeing to the updated Microsoft Services Agreement." *Id.* ¶ 5(b); Exs. 1 & 2. The email went on to state: "If you do not agree, you can choose to discontinue using the products and services, and close your Microsoft account before these terms become effective." *Id*. The account associated with Plaintiff's email address remains open and



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

active, and Microsoft has not received any notice that Plaintiff opted out of any updates. *Id.* ¶ 7(c).

To dismiss the interrupt notice and proceed with using the Microsoft product or service, the Microsoft account holder must click on a button acknowledging the notice. *See id.* ¶ 5(b); Exs. 3–7. Microsoft's records show that a user of the Microsoft account associated with Plaintiff's email address acknowledged the terms of the MSA at least as recently as November 11, 2024 at 17:10:28 UTC, by clicking on the interrupt notice concerning the September 2024 MSA update. *Id.* ¶ 7(b).

The current MSA begins, in bold, capitalized text:

> **IF YOU LIVE IN (OR YOUR PRINCIPAL PLACE OF BUSINESS IS IN) THE UNITED STATES, PLEASE READ THE BINDING ARBITRATION CLAUSE AND CLASS ACTION WAIVER IN SECTION 15. IT AFFECTS HOW DISPUTES ARE RESOLVED.**

Section 15 provides for binding arbitration on an individual basis, without class actions:

> **Binding Arbitration and Class Action Waiver If You Live In (or, If a Business, Your Principal Place of Business Is In) the United States.** We hope we never have a dispute, but if we do, you and we agree to try for 60 days, upon receipt of a Notice of Dispute, to resolve it informally. If we can't, you and we agree to **binding individual arbitration before the American Arbitration Association ("AAA") under the Federal Arbitration Act ("FAA"), and not to sue in court in front of a judge or jury**. Instead, a neutral arbitrator will decide and the arbitrator's decision will be final except for a limited right of review under the FAA. **Class action lawsuits, class-wide arbitrations, private attorney-general actions, requests for public injunctions, and any other proceeding or request for relief where someone acts in a representative capacity aren't allowed. Nor is combining individual proceedings without the consent of all parties.**

*Id.* Ex. 16 at 1, 20–21; *see also* Ex. 15 at 1, 25–26 (similar for 2024 MSA).

### C. Plaintiff Filed a Lawsuit.

Plaintiff filed this lawsuit in King County Superior Court on June 17, 2026. Dkt. 1-1. Plaintiff's First Amended Complaint, filed June 18, 2026, claims the price of his Xbox console was inflated due to unlawful tariffs, and purports to represent a nationwide class. *See* FAC ¶¶ 2, 13, 47. Plaintiff brings claims for unjust enrichment, money had and received, and declaratory judgment. *Id.* ¶¶ 65–84. Microsoft removed the case to this Court on July 17, 2026. Dkt. 1.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## III. ARGUMENT

The Federal Arbitration Act provides that written agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects federal policy recognizing that "arbitration is a matter of contract, and courts *must* enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019) (emphasis added). Congress enacted the FAA to overcome judicial hostility to arbitration because "in Congress's judgment arbitration ha[s] more to offer than courts recognize[]—not least the promise of quicker, more informal, and often cheaper resolutions for everyone involved." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505–06 (2018). The FAA thus "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms[.]'" *Id.* at 506 (citation omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (noting the "liberal federal policy favoring arbitration agreements").

In deciding a motion to compel arbitration, the Court's review is limited to "two gateway arbitrability issues: '(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue.'" *Bielski*, 87 F.4th at 1009 (citation omitted). If the Court answers both questions in the affirmative, it "*must* order the parties to proceed to arbitration in accordance with the terms of the agreement." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 509–10 (9th Cir. 2023) (emphasis added).

The Court should compel individual arbitration and stay the action because two valid arbitration agreements exist and cover each of Plaintiff's claims.

### A. Plaintiff Agreed to Arbitrate Disputes with Microsoft.

In determining whether a valid agreement to arbitrate exists under the FAA, courts apply state law principles of contract formation. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter … courts generally … should apply ordinary state-law principles that govern the formation of contracts."); *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (same); *Perez v. Discover Bank*, 74



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

F.4th 1003, 1010 (9th Cir. 2023) (same).[3] Plaintiff agreed to arbitrate his claims with Microsoft by using his Xbox console and by accepting the MSA.

### 1. Plaintiff Agreed to the Warranty & Agreement.

Plaintiff agreed to arbitration through the W&A. The Product Guide, included with his Xbox console, stressed that a user "must accept" the W&A available "at support.microsoft.com/warranty[,]" which also contained the arbitration agreement. Zuberbier Decl. ¶ 4 & Ex. 1 at 2. The notice continued: "By purchasing or using your Microsoft Product, you agree to … Manufacturer's Limited Hardware Warranty & Agreement[.]" *Id*. On that same page, the Product Guide highlighted that the W&A includes "[**a] binding arbitration clause and class action waiver**" that "**affect[] how disputes concerning your Microsoft product**," including the "price" of your console "**are resolved**." *Id*. The Product Guide again provided the URL where a user could find the complete arbitration terms. *Id*. Plaintiff thus had ample opportunity to review the arbitration agreement and class action waiver before deciding whether to use his Xbox console. If Plaintiff did not want to accept the W&A, including the arbitration agreement, he was instructed to "not set up or use your Xbox" and instead "[r]eturn the Xbox Product to Microsoft or your retailer for a refund." *Id*. The packaging further provides on the outside "**IMPORTANT!** You must accept … the Warranty & Agreement" and again directs prospective customers to the URL where the full terms can be read. Zuberbier Decl. ¶ 5 & Exs. 2 & 3.

Courts have long enforced in-the-box contracts packaged with the products to which they pertain. For instance, in *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997), the Seventh Circuit applied Illinois law and enforced an arbitration clause contained in the terms packed in the box in which a computer was sold. The court reasoned: "Practical considerations support allowing vendors to enclose the full legal terms with their products. … Customers as a

---

[3] Plaintiff alleges he is a resident of California. FAC ¶ 17. But "[the Court] need not decide which [s]tate's laws govern[]" because both Washington and California law "dictate the same outcome." *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (enforcing arbitration clause contained in agreement) (citation omitted); *J.A.*, 2021 WL 1723454, at *3 n.1 (declining to decide which state law to apply to Microsoft agreement "because the arbitration agreements exist and are enforceable under any potentially relevant state law").



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

group are better off when vendors skip costly and ineffectual steps such as telephonic recitation, and use instead a simple approve-or-return device. Competent adults are bound by such documents, read or unread." *Id*.

Likewise, "Washington law permits 'shrink-wrap' contracts contained within a product box, even if the consumer did not admit to reading that contract." *See Schmidt v. Samsung Elecs. Am., Inc.*, 2017 WL 2289035, *2 (W.D. Wash. 2017); *see also Kwan v. Clearwire Corp.*, 2012 WL 32380, *8 (W.D. Wash. 2012) ("[T]he Washington Supreme Court held that shrinkwrap agreements are valid, and the terms contained within them are enforceable, because the purchaser accepts the terms when it uses the product." (citing *Mortenson Co., Inc. v. Timberline Software Corp.*, 140 Wn.2d 568 (2000))); *accord In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d 1285, 1297 (N.D. Cal. 2018) ("the current trend of California cases has been to enforce contracts even when consumers later receive the terms" and compelling arbitration for shrink-wrap, in-the-box agreement under California law).

An in-the-box contract is effective as long as the consumer "receive[s] adequate notice of its existence." *See Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1289 (9th Cir. 2017). Federal courts applying California law have enforced in-the-box agreements where the notices referred to "additional contractual *terms* and *conditions*[,]" *Schmidt*, 2017 WL 2289035, at *4, "us[ing] classic contractual language[,]" *In re Samsung Galaxy*, 298 F. Supp. 3d at 1294. Such courts have further emphasized that these notices clearly "condition[] the consumer's use of a service [or product] on her agreement to abide by the terms and conditions." *Baird v. Charter Commc'ns, Inc.*, 2020 WL 11626081, *5 (C.D. Cal. 2020); *see also Wheeler v. LG Elecs. USA, Inc.*, 2024 WL 51353, *9 (E.D. Cal. 2024) ("[T]he arbitration notices accompanying the dishwasher make clear to the consumer that use of the product constitutes acceptance of the arbitration agreement."); *In re Samsung Galaxy*, 298 F. Supp. 3d at 1294–95 ("The language '[b]y using this device, you accept' prompts consumers to read the guidebook and indicates that using the device would subject the consumer to contractual terms."). The prominence of the notice is significant as well, particularly where the packaging alerts users that they must agree to



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

certain terms. *See Norcia*, 845 F.3d at 1287; *see also Baird*, 2020 WL 11626081, at *4 & n.3 (compelling arbitration where notice on box included "an acknowledgement that the person agreed to the terms and conditions of service"); *In re Samsung Galaxy*, 298 F. Supp. 3d at 1294 (enforcing agreement where "the text on the boxes" gave "users notice of additional terms and conditions") (emphasis omitted); *Schmidt*, 2017 WL 2289035, at *4 (noting that language "Device purchase [is] subject to additional Samsung terms and conditions" on product packaging alerted customers to the binding terms).

The Product Guide in the Xbox packaging provided robust notice that the W&A affects the consumer's legal rights and constitutes a binding agreement. It provided clear, up-front information about the binding nature of the W&A, including the consumer's agreement to arbitrate. It employed "classic contractual language[,]" *In re Samsung Galaxy*, 298 F. Supp. 3d at 1294, telling users they "must accept" the W&A, including the arbitration agreement inside. Microsoft's product packaging even went a step beyond, alerting consumers to the W&A (and the need to "accept" the W&A terms) in a notice displayed on the outside of the box, with the URL where a consumer could find the full W&A. Zuberbier Decl. ¶ 5, Exs. 2 & 3. The Product Guide inside the box then notified users that the product should be used *only* if the user accepted the governing terms, including the W&A. *Id.* Ex. 1 at 2. The Product Guide further informed users in plain language that disputes must "be resolved only by individual binding arbitration under the Federal Arbitration Act before a neutral arbitrator whose decision will be final—not before a judge or jury, and not in a class action lawsuit, [or a] class-wide arbitration." *Id.* at 8.[4]

In *J.A. v. Microsoft Corp.*, this Court compelled arbitration relying on nearly identical facts and agreement language for Xbox controllers. 2021 WL 1723454, at *3 n.1, *7. The Court

[4] It makes no difference that the full W&A terms were available only online instead of printed within the product guide. The Product Guide contained in the box summarized the key terms, and regardless both the packaging and the Product Guide directed users to the full terms online. *See In re Samsung Galaxy*, 298 F. Supp. 3d at 1295 (referring to warranty "on the phone or on samsung.com"); *In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019) (noting that "California courts have deemed analogous incorporations by reference valid and the incorporated terms binding."); *see also Lombardi v. DirecTV, Inc.*, 549 F. App'x 617, 620 (9th Cir. 2013) (enforcing arbitration agreement where letter informed customer of arbitration requirement and provided URL for full terms), *rev'd on other grounds*, 546 F. App'x 715 (9th Cir. 2013).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

concluded that "the [Product Guide] followed any generic title with specific language warning consumers they must accept Microsoft's terms of use and that, through the use of the product, agreed to be bound by those terms." *Id.* at *7. The same basic facts apply to Xbox consoles purchased since February 2025, except that the Product Guide now alerts customers of the arbitration agreement in bold capital font on the *first* page of the text, rather than a few pages later. Zuberbier Decl. Ex. 1 at 2.

Plaintiff's use of the Xbox console bound him to the W&A, which included the arbitration agreements that require arbitrating disputes with Microsoft on an individual basis. The Court should hold Plaintiff to his agreements and compel individual arbitration.

**2. Plaintiff Agreed to the Microsoft Services Agreement.**

Plaintiff separately agreed to arbitrate through the Microsoft Services Agreement. The MSA is an online agreement, which "presents the user with a message on his or her computer screen, requiring that the user manifest his or her assent to the terms of the license agreement by clicking on an icon." *Harbers v. Eddie Bauer, LLC*, 2019 WL 6130822, *6 (W.D. Wash. 2019) (citation omitted). Online agreements are enforceable where "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Oberstein*, 60 F.4th at 515 (citation omitted). Courts "routinely find" agreements enforceable where users are presented "with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Id.* at 513 (citation omitted). In fact, "[c]ourts in this District have previously concluded that arbitration provisions in materially identical iterations of the MSA constitute valid arbitration agreements." *See McCray*, 2026 WL 83990, at *3 (enforcing MSA as updated in 2024 and collecting case cites); *Saeedy*, 757 F. Supp. 3d at 1201–02; *J.A.*, 2021 WL 1723454, at *4; *Romanov*, 2021 WL 3486938, at *1–2.

Furthermore, "[a] reasonable user would know that by clicking the registration button, he was agreeing to the terms and conditions" even where the terms are merely "accessible via the



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

hyperlink[.]" *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 79–80 (2d Cir. 2017); *see also Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911–12 (N.D. Cal. 2011) (compelling arbitration where contract involved "modified clickwrap" in which terms of service not visible but accessible via hyperlink); *Graf v. Match.com, LLC*, 2015 WL 4263957, *4 (C.D. Cal. 2015) (enforcing arbitration where "users ... were required to affirmatively agree to the Terms of Use when they clicked on a 'Continue' or other similar button ... where it was explained that by clicking on that button, the user was affirming that they would be bound by the Terms of Use, which were always hyperlinked and available for review").

Courts have also found notice of updated terms provided through email and followed by continued use of the services covered by those terms sufficient to show assent. *See, e.g.*, *Saeedy*, 757 F. Supp. 3d at 1201 (collecting cases); *West v. Uber Techs.*, 2018 WL 5848903, *5 (C.D. Cal. 2018) ("Courts have found that when consumers receive emails such as this one [e.g., having a subject line stating that Uber had updated its terms of use, including in the body that the arbitration agreement had been revised, and providing a link to the updated terms], continued use of the service or product constitutes assent to the updated terms."); *see also Sadlock v. Walt Disney Co.*, 2023 WL 4869245, *12–13 (N.D. Cal. 2023) (emails followed by continued use sufficient to establish assent even where notice and assent had not been shown in relation to original agreement); *In re Uber Techs., Inc.*, 2019 WL 6317770, *4 (C.D. Cal. 2019) (stating that, "even if [plaintiff's] initial registration processes were somehow flawed, she was still on notice of the updated terms").

The process by which Plaintiff accepted the MSA fits squarely within this authority. *See Talyancich v. Microsoft Corp.*, 2012 WL 1563884, *1, *3–4 (C.D. Cal. 2012) (noting that "Xbox LIVE service, subscribers are required to click 'ACCEPT' on a screen displaying the Xbox LIVE Terms of Use" and dismissing for lack of venue based on forum selection clause in Microsoft's Xbox Live clickwrap agreement). When Plaintiff registered for Xbox Live, he was required to assent to the Xbox TOU by clicking "Accept" on a screen displaying the Xbox Live TOU. Abbott Decl. ¶ 5. Otherwise, he could not access the Xbox Live services. *Id*. The TOU



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

notified users Microsoft could change the terms of the agreement with 30 days' notice and that if users did not agree to the changes, they needed to cancel their use of the service before the change took place. *Id.* Ex. 1 § 15. He was further notified and required to assent to each update thereafter, (*id.* ¶ 5), including when Microsoft added an arbitration clause to the Xbox TOU and when Microsoft transitioned from the Xbox TOU to the MSA. *Id.* ¶¶ 6–8. Plaintiff had an opportunity to review the MSA by clicking the hyperlinked terms, which appeared near the button he was required to click to indicate his acceptance of the MSA and proceed to game play. *Id.* ¶¶ 5, 7. He would not have been able to engage in Xbox game play through Microsoft's services, which Microsoft's records indicate he continued to do, without clicking through the MSA terms. *Id.* ¶¶ 7–8.

Plaintiff also received at least one interrupt notice to notify him of a new MSA when he logged into a Microsoft service while the notice was active. *See* Steenwyk Decl. ¶ 7(b). Microsoft's records show that a user of the Microsoft account associated with Plaintiff's email address affirmatively acknowledged the terms of the 2024 MSA at least as recently as November 11, 2024, by clicking on an "interrupt notice" concerning the 2024 MSA update. *See id.*. Microsoft also sent email notice to users regarding the 2024 update to the MSA between August 8, 2024, and September 10, 2024 and the 2025 update to the MSA between August 4, 2025, and September 5, 2025, well before each version went into effect. *Id.* ¶ 5(b), Exs. 1, 2. *See McCray*, 2026 WL 83990, at *4 ("[C]ourts have concluded that Microsoft's update e-mails and 'interrupt notices' constitute adequate notice of and assent to the terms of the MSA's arbitration provision—particularly where users continue to use Microsoft's services following acknowledgment of the interrupt notice and/or receipt of the update e-mail.").

**B. Plaintiff's Claims Fall Within the Scope of the Arbitration Agreements.**

Once it is shown that the parties have a contract that provides for arbitration of some issues between them, "there is a presumption of arbitrability[,]" and any "[d]oubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643,



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

650 (1986) (citation omitted). Plaintiff cannot overcome this presumption of arbitrability under the W&A or the MSA.

***W&A***. The W&A's arbitration clause is facially "as broad as it can be" except as to intellectual property disputes. Zuberbier Decl. Ex. 4 § 11. The scope covers "any claim or controversy between you and us concerning the Microsoft Product [defined as "genuine Microsoft hardware product … purchased from Microsoft or an authorized reseller" (*id.* at §1(a)], its price … your purchase transaction[.]" ***Id***. The arbitration clause applies to claims brought "*under any legal theory* including contract, warranty, tort, statute, or regulation." ***Id***. Here, Plaintiff's claims stem from the allegation that he bought an Xbox console and purportedly "paid higher prices as a result of the tariffs." FAC ¶ 47. These allegations involve a claim or controversy between Plaintiff and Microsoft "concerning the Microsoft product," the Xbox console, including "its price" and Plaintiff's "purchase transaction[.]" Zuberbier Decl. Ex. 4 § 11.

***MSA***. The MSA's arbitration agreement is also "as broad as it can be" and expressly covers "*any* claim or controversy" "concerning" Microsoft "Services, the Services' or software's price, [a user's] Microsoft account, marketing, communications, [a user's] purchase transaction, billing, or these Terms, under any legal theory including contract, warranty, tort, statute, or regulation[.]" Steenwyk Decl. Ex 16 § 15(a) (2025 MSA); Ex. 15 § 15(a) (2024 MSA). Plaintiff cannot dispute that, in retaining and using the very Xbox console for which he now seeks a reimbursement, Plaintiff has repeatedly used Xbox Live, a service covered by the MSA, to download games and manage his online account. Furthermore, Microsoft's purported duty to identify and refund portions of payments to Xbox purchasers months after their purchase necessarily touches on agreements that govern the ongoing relationship between Microsoft and Plaintiff, including the MSA.

Where an arbitration clause is broad—like both of these agreements—the Ninth Circuit has found that it is capable of covering all claims "having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Simula, Inc. v. Autoliv,*



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). The allegations "need only 'touch matters' by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*, 473 U.S. 614, 624 n.13 (1985)).

"[O]nly the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T*, 475 U.S. at 650 (citation omitted); *Amirhamzeh v. Wells Fargo Bank, N.A.*, 2014 WL 12610227, *1 (N.D. Cal. 2014) (enforcing "extremely broad" arbitration agreement that covered "any dispute[s]") (citation omitted). For example, courts in this District have found a wide range of claims fall easily within "the broad 'dispute' provision" of the MSA, including those involving Xbox use. *See Mendoza v. Microsoft Inc.*, 2014 WL 4540225, *4 (W.D. Wash. 2014) (claims relating to Xbox Live fell within scope of MSA's arbitration agreement); *Walsh v. Microsoft Corp.*, 2014 WL 4168479, *3 (W.D. Wash. 2014) (same); *McCray*, 2026 WL 83990, at *5 ("Plaintiff's claims [relating to the Computer Fraud and Abuse Act] also plainly fall within the scope of the 2024 MSA's arbitration provision."); *Saeedy*, 757 F. Supp. 3d at 1207 ("Plaintiffs' claims [regarding Microsoft Edge] fall within the scope of the MSA and its arbitration clause because they touch directly on their use of Microsoft accounts and Bing, both of which are 'Covered Services' under the terms of the MSA."); *see also Ramos v. Superior Ct.*, 28 Cal. App. 5th 1042, 1052–53 (2018) (finding claims fell within scope of arbitration clause because they "have their 'roots in the relationship' created by" the agreement) (citations omitted).

To the extent any ambiguity as to scope remains, the presumption favoring arbitrability applies. *See Columbia Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union, No. 20-35037*, 23 F.4th 836, 847 (9th Cir. 2022); *see also AT&T*, 475 U.S. at 650 ("[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

dispute. Doubts should be resolved in favor of coverage.'") (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).

**C. The Court Should Stay This Action Pending Arbitration.**

The FAA requires staying proceedings after granting a motion to compel arbitration on the application of a party. *See* 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). The Court should stay Plaintiff's claims pending the outcome of Plaintiffs' individual arbitrations.

## IV. CONCLUSION

The Court should order Plaintiff to submit his claims to binding arbitration on an individual basis and stay this action pending individual arbitration of Plaintiff's claims.

DATED this 21st day of August, 2026.

DAVIS WRIGHT TREMAINE LLP

By: */s/ Emily Parsons*

Emily Parsons, WSBA #57061
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Tel: 206.622.3150
Fax: 206.757.7545
Email: emilyparsons@dwt.com

James Moon (*pro hac vice*)
350 S. Grand Avenue, 27th Floor
Los Angeles, CA 90071
Main: 213.633.6800
Fax: 213.633.6899
Email: jamesmoon@dwt.com

COVINGTON & BURLING LLP
Valerie Hletko (*pro hac vice*)
Laura Flahive Wu (*pro hac vice*)
Nathan Lange (*pro hac vice*)
Maeve McBride (*pro hac vice*)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Tel: 202.662.6000
Email: vhletko@cov.com
lflahivewu@cov.com
nlange@cov.com
mmcbride@cov.com

*Attorneys for Defendant Microsoft Corporation*

I certify that this memorandum contains 6,075 words, in compliance with the Local Civil Rules