**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

TREVOR HASTINGS, on behalf of himself and all others similarly situated,

Plaintiff,

v.

MICROSOFT CORPORATION,

Defendant.

No. 2:26-cv-02537-JLR

Honorable Judge James L. Robart

PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OR STAY CASE [ECF 19] AND MOTION TO DISMISS [ECF 23]



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

# TABLE OF CONTENTS

**Contents**

**Page(s)**


I. INTRODUCTION ..... 1

II. FACTUAL & PROCEDURAL BACKGROUND ..... 1

A. Arbitration ..... 2

B. "In the Box" Arbitration ..... 3

C. Microsoft Services Agreement ..... 6

1. Validity ..... 7

2. Scope – The Delegation Clause in the Services Agreement ..... 9

D. Motion to Dismiss ..... 12

E. Standard of Review ..... 12

F. Unjust Enrichment ..... 13

G. Money Had & Received ..... 15

H. Declaratory Judgment ..... 16

III. CONCLUSION ..... 16




STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 12

*Boquist v. Courtney*,
32 F.4th 764 (9th Cir. 2022) ........ 12

*Burnett v. Pagliacci Pizza, Inc.*,
470 P.3d 486 (Wash. 2020) ........ 7, 8

*Chamber of Com. of the U.S. v. Bonta*,
62 F.4th 473 (9th Cir. 2023). ........ 7

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*,
207 F.3d 1126 (9th Cir. 2000). ........ 3

*Coast Trading Co. v. Parmac Inc.*,
21 Wash. App. 896, 587 P.2d 1071 (1978) ........ 15

*Compare Young v. Young*,
164 Wash. 2d 477 (2008) ........ 13

*Davenport v. Washington Educ. Ass'n*,
147 Wn. App. 704 (2008). ........ 14

*Douglas v. U.S. Dist. Ct. for Cent. Dist. of California*,
495 F.3d 1062 (9th Cir. 2007) ........ 8

*Ehsani v. McCullough Family P'ship*,
159 P.3d 407 (Wash. 2007) ........ 15

*Farwest Steel Corp. v. Mainline Metal Works, Inc.*,
48 Wash. App. 719 (1987). ........ 13

*First Options of Chicago, Inc. v. Kaplan,*
514 U.S. 938, 115 S. Ct. 1920 (1995) ........ 9

*Hernandez v. LG Elecs. U.S.A., Inc.*,
2024 WL 1601260 (C.D. Cal. Mar. 28, 2024) ........ 5

*Hill v. Gateway 2000, Inc.*,
105 F.3d 1147 (7th Cir. 1997) ........ 5



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
298 F. Supp. 3d 1285 (N.D. Cal. 2018) ........ 5

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ........ 11

*Klocek v. Gateway, Inc.*,
104 F. Supp. 2d 1332 (D. Kan. 2000) ........ 5

*Lamharzi Alaoui v. Segway Powersports, Inc.*,
2026 WL 1658502 (C.D. Cal. June 5, 2026) ........ 5

*Leslie v. Fid. Nat'l Title Ins. Co.*,
598 F. Supp. 2d 1176 (W.D. Wash. 2009) ........ 15

*Littlejohn v. Kaiser Fdn. Health Plan of Wash.*,
2024 WL 4451955 (W.D. Wash. Oct. 9, 2024). ........ 12

*McCray v. Microsoft Corp.*,
2026 WL 83990 (W.D. Wash. Jan. 1, 2026) ........ 11

*Mendoza v. Microsoft, Inc.*,
2014 WL 4540225 (W.D. Wash. 2014) ........ 11

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ........ 6

*Norcia v. Samsung Telecommunications Am., LLC*,
845 F.3d 1279 (9th Cir. 2017). ........ *passim*

*Pang v. Samsung Elecs. Am., Inc.*,
371 F. Supp. 3d 633 (N.D. Cal. 2019) ........ 5

*Perez v. DirecTV Grp. Holdings, LLC*,
251 F. Supp. 3d 1328 (C.D. Cal. 2017) ........ 5

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010) ........ 9

*Saeedy v. Microsoft Corp.*,
757 F. Supp. 3d 1172 (W.D. Wash. 2024) ........ 9, 11

*Shersher v. Superior Ct.*,
154 Cal. App. 4th 1491 (2007) ........ 13

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ........ 10, 11



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

*Southern Natural Gas Co. v. F.E.R.C.*,
813 F.2d 364 (11th Cir. 1987) ..................... 16

*Stewart v. Beam Glob. Spirits & Wine, Inc.*,
877 F. Supp. 2d 192 (D.N.J. 2012). ..................... 14

*Ting v. AT&T*,
319 F.3d 1126 (9th Cir. 2003) ..................... 8

*Velasquez-Reyes v. Samsung Elecs. Am., Inc.*,
2017 WL 4082419 (C.D. Cal. Sept. 13, 2017) ..................... 6

*Walsh v. Microsoft Corp.*,
2014 WL 4168479 (W.D. Wash. 2014) ..................... 11

**Statutes**

50 U.S.C. § 1701 ..................... 1, 16
50 U.S.C. § 1702(a)(3) ..................... 14

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ..................... 2, 12



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

## I. INTRODUCTION

Microsoft's Xbox gaming console is one of its most recognizable products. During the time when IEEPA tariffs were imposed, Microsoft passed on the costs of those tariffs to consumers like Plaintiff. D.E. 1-1 at ¶¶ 4, 8. Unlike other companies that are offering refunds to consumers who paid higher prices in the form of tariff-related pass through charges, Microsoft is keeping the money it took from consumers.[1] And now by this Motion, Microsoft wants to arbitrate this dispute with a plaintiff who did not even buy his Xbox directly from Microsoft, but from a retailer selling Microsoft products. D.E. 1-1 at ¶ 47. That is unjust and unconscionable. The Motions should be denied. D.E. 23, 24.[2]

## II. FACTUAL & PROCEDURAL BACKGROUND

In 2025, the U.S. government imposed tariffs under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701. D.E. 1-1 at ¶ 1. The Supreme Court later ruled that those tariffs were unlawful. D.E. 1-1 at ¶ 6. Microsoft's business, including its console business, relies on foreign manufacturing. D.E. 1-1 at ¶ 22. Microsoft passed on the costs of those later-deemed-illegal tariffs to American consumers through price increases. D.E. 1-1 at ¶¶ 8, 33. These price increases included price hikes on Xboxes. D.E. 1-1 at ¶¶ 34, 36. Now, Microsoft is entitled to refunds of the tariff costs it paid to the federal government and passed on to consumers. D.E. 1-1 at ¶¶ 40–42. Thus, Microsoft stands to receive an enormous windfall because it is double-dipping: once because the government is repaying the tariffs that Microsoft paid, D.E. 1-1 at ¶¶ 7, 10, 11, 38, 40 ; and twice because it is keeping the money consumers paid it in the form of higher prices, D.E. 1-1 at ¶¶ 36, 41. That result is wholly inequitable.

[1] https://finance.yahoo.com/economy/article/new-data-shows-the-us-governments-166-billion-tariff-refund-process-is-quickly-tapering-off-201348435.html

[2] This brief refers to Defendant's briefing with pincites to the blue pagination on the ECF stamp.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

This lawsuit is no more complicated than that – consumers are the ones left in the dust, and Microsoft gets a huge cash influx. Even if Defendant and Plaintiff have an enforceable contract – and the Complaint nowhere says that – there is no contract in this record broad enough to compel arbitration on these claims, because they do not relate to: the quality of Microsoft's product, some defect with Microsoft's product, or the quality or functionality of the services Microsoft offered. Instead, they relate to Microsoft's decision to double dip from the government's coffers and from consumers' wallets. This is not a scenario that consumers, or Microsoft, could have contemplated.

Microsoft has filed more than four hundred and fifty pages of material in this record to assert that Plaintiff's claims are arbitrable and that his claims fail under Rule 12(b)(6). D.E. 19, 20, 21, 22, 23. The arbitration clauses that Plaintiff allegedly agreed to here are unenforceable and unconscionable or do not cover this case. This case is not about gaming or about the services Microsoft provides to players online. An Xbox is a product – a product that plays discs and connects to the Internet. What happened *after* Plaintiff bought the product is the basis for the claims – this dispute is about Microsoft's unjust retention of the benefits that consumers conferred upon it. Plaintiff never agreed to arbitrate a claim like that. He did not even purchase his Xbox directly from the company. D.E. 1-1 at ¶ 47. This dispute does not concern products liability arising from the product's performance or malfunction, nor does it concern Microsoft's oversight of some aspect of its gaming universe. It concerns Microsoft's decisions after-the-fact (after the purchase was complete) to retain the money consumers paid it to cover the tariffs. That is wholly unjust, and Plaintiff's claims under those theories are well pled.

**A. Arbitration**

The starting point in the Ninth Circuit is that questions of arbitrability—including the scope of an arbitration clause—are presumptively for courts to resolve. The Court, as a general



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

matter, determines two issues with a motion to compel arbitration: "(1) whether a valid agreement to arbitrate exists and, if it does (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Microsoft proffers two bases for its request to get rid of this case. First is its Jack-in-the-Box arbitration theory, which fails on its merits. Second is its own services agreement governing services Microsoft provides. Even if Plaintiff assented to that agreement, its scope does not encompass this dispute. So this dispute is not arbitrable.

Consider too what sending this case to arbitration would mean. Microsoft pretends this case concerns "disappointed expectations," but it doesn't. It concerns a corporation recovering twice on what it paid for an expense. That has nothing to do with the services Microsoft provides to administer its online gaming platforms, nor does it have anything to do with how the product itself functions. This case is about *conduct* after the government determined that the tariffs were illegal and that the monies collected would be returned – and there is no arbitration agreement in this record that covers that.

**B. "In the Box" Arbitration**

Microsoft first argues that Plaintiff should be held to the "box" arbitration agreement that was (allegedly) in Plaintiff's Xbox's box. D.E. 19 at 8. Of course, Microsoft's declarant does not describe what was inside *Plaintiff's* box that he bought from another retailer – it merely describes what is *generally* in its packaging. D.E. 20 at 3. That alone is grounds to decline to hold Plaintiff to an agreement that Microsoft has no basis to state he ever saw, because it did not actually sell him the product, D.E. 1-1 at ¶ 47. All Microsoft's representative can attest to is what is *generally* in the box. That is insufficient. It also goes without saying that a "Product Guide" is not a contract. D.E. 20 at ¶ 3; *see also Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1290 (9th Cir. 2017). The hodgepodge of documents Microsoft has assembled and attached



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

to its motion bespeaks a lack of clarity and a lack of conspicuousness in informing consumers that this "in the box" arbitration agreement will bind them. Microsoft is hoping that these exhibits will be additive – but they are not. And what's in the box is focused on playing games – not on arbitration.[3]

Turning to the exhibits offered by Microsoft, Exhibit 1 is printed in tiny, tiny type and states on the front "Product and Regulatory Guide" under a big Xbox symbol. D.E. 20 at 5. Exhibit 2's text is completely unreadable. D.E. 20 at 34. And the focus of the box is important – it contains colorful graphics and bright colors, advertising the consumer to open the box to "power your dreams." D.E. 20 at 34. Exhibit 3, again in tiny type, merely references other agreements regarding using the Xbox online ecosystem. D.E. 20 at 36. It doesn't even say anything about arbitration. There is no question, even according to Microsoft's declarant, that Exhibit 4 is not even inside the box. D.E. 20 at ¶ 6. So there is **nothing** in this box (which Microsoft cannot even attest that this Plaintiff received) that advertises conspicuously that arbitration is even a possibility. The focus is getting the consumer to open the box and play games on it. The fact that Microsoft has proffered this "in the box" agreement as a legitimate basis for its motion to arbitrate demonstrates that it knows this claim is not really arbitrable.

And in general, dumping a brochure into a box does not require a consumer to arbitrate. *Norcia*, 845 F.3d at 1290 (noting that silence does not constitute assent and rejecting "in the box" arbitration provision). Microsoft cites *Norcia* but does not correctly apply it. In *Norcia*, Samsung tried to hang its arbitration hat on a brochure included with the subject product with the title "Product Safety & Warranty Information." *Id.* at 1289. That was insufficient to compel a

[3] Imagine if Microsoft's flagship product shipped in a bright red box with big black letters saying "SUBJECT TO ARBITRATION AGREEMENT." That would be conspicuous but commercially ridiculous. That's why corporations hide their terms – consumers just want to open and use the product. Burying an arbitration provision in a product manual isn't just unenforceable – it is sneaky.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

consumer to arbitrate – so too here. This result is wholly consistent with law and with common sense. A product manual, warranty, user guide, or similar description of what a product does (or how to use it) does not necessarily make conspicuous that a consumer could be entering a contract by doing something like opening the package containing the product. That is *Norcia*'s holding. And *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997) (cited by Microsoft at D.E. 19 at 14), has been roundly criticized for decades. *Perez v. DirecTV Grp. Holdings, LLC*, 251 F. Supp. 3d 1328, 1341 (C.D. Cal. 2017) ("Hence, District Court decisions citing to the Seventh Circuit *Hill* decision in reliance on such a standard are of little persuasive value."); *Klocek v. Gateway, Inc.*, 104 F. Supp. 2d 1332, 1339 n.9 (D. Kan. 2000) (collecting scholarly disapproval of *Hill*). The Ninth Circuit has been rightly skeptical of boxed arbitration terms, and *Hill* is an outlier.

Including nondescript documents in a box does not bind an ordinary consumer to arbitration, as courts in this Circuit have consistently held in accordance with *Norcia*. *See, e.g.*, *Pang v. Samsung Elecs. Am., Inc.*, 371 F. Supp. 3d 633, 638–39 (N.D. Cal. 2019) ("With respect to whether Seminatore had notice of the offer to arbitrate based only upon the device's packaging and the inclusion of the Guidebook, the court finds the above courts' analysis persuasive and, in the case of *Norcia*, binding."); *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d 1285, 1298–99 (N.D. Cal. 2018) (denying motion to compel arbitration with Samsung phone and "in the box" surprise arbitration in warranty guidebook); *see also Lamharzi Alaoui v. Segway Powersports, Inc.*, No. 5:25-CV-01659-SSS-SPX, 2026 WL 1658502, at *4 (C.D. Cal. June 5, 2026) ("Thus, the Court finds, Plaintiff was not bound by the arbitration provision, even if an in-the-box contract would otherwise be enforceable under California law."); *Hernandez v. LG Elecs. U.S.A., Inc.*, No. 222CV08813SVWJEM, 2024 WL 1601260, at *4–5 (C.D. Cal. Mar. 28, 2024) (similar analysis); *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

EDCV161953DMGKKX, 2017 WL 4082419, at *6 (C.D. Cal. Sept. 13, 2017), *aff'd*, 777 F. App'x 241 (9th Cir. 2019) (similar). These decisions all reflect the commercial reality that companies want consumers to open the box and use the product.

Plaintiff paid for and received his Xbox before ever seeing the box arbitration provisions Microsoft now points to as binding arbitration. Pointing a consumer to some other page or some other link, where the consumer must travel to see the terms they are agreeing to, is inconsistent with formation. *Cf. Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014) ("Given the breadth of the range of technological savvy of online purchasers, consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound."). "Power your dreams" is an invitation to game online – not to arbitrate:




D.E. 20 at 34. The "in the box" arbitration provision is unenforceable.

**C. Microsoft Services Agreement**

The title of Microsoft's second bite at the arbitration apple says it all – the Microsoft *Services* Agreement covers *services*, to the extent that Plaintiff is bound to that agreement. This case is not about services that Microsoft or anyone else rendered. The fact that Microsoft felt it necessary to allege two weak arguments for arbitration here demonstrates that neither is strong.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

If the Court finds that the Services Agreement ("MSA") is a valid and enforceable agreement, then the Court must determine whether that agreement encompasses the dispute at issue. Plaintiff addresses both issues below.

**1. Validity**

As explained below, the MSA's own terms confirm that this Court has exclusive authority to decide the validity of the arbitration agreement, including the unconscionability challenge raised in this section.

A court may invalidate an arbitration agreement based on generally applicable state contract law defenses like unconscionability. *See Chamber of Com. of the U.S. v. Bonta*, 62 F.4th 473, 483 (9th Cir. 2023). Under Washington law,[4] a finding of either procedural or substantive unconscionability is "sufficient to void the agreement." *Burnett v. Pagliacci Pizza, Inc.*, 470 P.3d 486, 494 (Wash. 2020). To determine if a party lacked meaningful choice and an agreement is procedurally unconscionable, Washington courts examine the circumstances surrounding the transaction, including: (1) the manner in which the contract was entered; (2) whether plaintiff had a reasonable opportunity to understand its terms; and (3) whether important terms were hidden in fine print. *Burnett*, 470 P.3d at 495.

To be perfectly clear: an Xbox is a gaming console. It can play discs like CDs, Blu Ray discs, or DVDs in addition to connecting a user to the Internet to game online. While certainly the machine constitutes an expensive CD or DVD player, if a consumer chose to purchase one and simply play CDs all day on it, that is a purpose for which the machine could be used. At the end of the day, the Xbox is simply a machine. Microsoft sells this machine with full knowledge

[4] As Microsoft points out, D.E. 19 at 14 n.3, the choice of law here is likely ancillary.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

that people resell it through other online retailers and that people may never use it to game at all. That is the nature of this product.

Microsoft's MSA terms are non-negotiable "take it or leave it contracts" of adhesion. Plaintiff had no meaningful opportunity to negotiate or even review the extensive and convoluted terms of the MSA (and its yearly changes to the material terms of the MSA), its 50 or more versions of its Privacy Statement, and its arbitration clause. *See Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003) (finding arbitration agreement procedurally unconscionable contract of adhesion where it is "imposed" on customers "without opportunity for negotiation, modification, or waiver"); *Burnett*, 470 P.3d at 495–96 (finding an arbitration agreement procedurally unconscionable where the plaintiff had no notice of it and was unaware of its existence when signing an employment agreement).

Defendant states that to "access or use Xbox services," users must first accept and agree to the MSA, whether during the Microsoft account creation process, the Xbox account creation process, or both. Decl. of Adam Steenwyk, D.E. 21 at ¶ 4. That is, although Microsoft may allow for the purchase of an Xbox without agreement to the MSA, Microsoft *requires* its customers to create a Microsoft account and agree to the MSA to use the Xbox hardware they purchased. *Id.* So, if Plaintiff's purchase of the Xbox is covered by the MSA, Plaintiff was denied a meaningful choice as Plaintiff was not provided the MSA until after the purchase was completed and Plaintiff sought to use the product for its intended purpose. *See Douglas v. U.S. Dist. Ct. for Cent. Dist. of California*, 495 F.3d 1062 (9th Cir. 2007) (holding that an offer cannot actually assent to an offer unless he knows of its existence). This is in addition to the fact that Microsoft's current arbitration clause is contained on the 20th page of a 27-page agreement, delivered via a hyperlink in an email or "interrupt notice." *See* Steenwyk Decl., D.E. 21 at ¶¶ 4–7; Ex. 16 § 15, ECF No. 21 at 292. In short, Plaintiff was forced to enter a contract of adhesion after he already purchased



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

the Xbox. There was no reasonable opportunity to understand its terms because the purchase had been completed.

**2. Scope – The Delegation Clause in the Services Agreement**

This Court must first determine whether it has the power to evaluate the scope of the arbitration agreement. Where an agreement includes a delegation clause—effectively a second arbitration agreement in which the parties agree to arbitrate threshold issues concerning the interpretation or scope of a primary arbitration agreement, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)—the Court must first determine the validity of the arbitration clause. If the arbitration clause is unenforceable, then the Court has the power to evaluate the scope of the agreement, because "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is *clear and unmistakable evidence* that they did so." *First Options*, 514 U.S. at 944, 115 S.Ct. 1920 (citation modified). That is, unless there is a clear, unmistakable, and enforceable "delegation clause" the question of the scope of the arbitration clause is left to the Court.

Here, the MSA does not contain a clear, unmistakable delegation clause. The MSA explicitly states:

> The arbitrator rules on all issues *except that a court has exclusive authority: (i) to decide arbitrability, as well as formation, existence, scope, validity, and enforceability of this arbitration agreement;* (ii) to decide whether the parties have complied with the prearbitration requirements (including the individualized Notice of Dispute and Demand for Arbitration forms); (iii) to enforce the prohibition on class, representative, private attorney-general, or combined actions or proceedings, or public injunctive relief; and (iv) to enjoin an arbitration from proceeding if it does not comply with this section 15.

Decl. Adam Steenwyk, Ex. 16, § 15(d) of the MSA (D.E. 21 at 293) (emphasis added). That is, the MSA explicitly provides that the Court has exclusive authority to decide arbitrability and the scope of said arbitrability. Thus, the Court may decide the scope of the arbitration agreement. *See Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1203 (W.D. Wash. 2024) (finding



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

substantially similar clause in 2023 MSA to give court exclusive authority to decide arbitrability).

The Microsoft Services Agreement is not an all-purpose contract governing every interaction between Plaintiff and Microsoft. By its own title and its own operative definitions, it is an agreement about "Services"—specifically, "Covered Services." The full "Covered Services" list attached to Exhibit 15 and Exhibit 16 — the version of the MSA actually in effect when Plaintiff purchased the console at issue in August 2025 and the version currently in effect—enumerates dozens of specific Microsoft products and offerings, including, as relevant here, "Xbox Cloud Gaming," "Xbox Game Pass," "Xbox Game Studios games, apps and websites," "Xbox Live Gold," "Xbox Live," "Xbox Music," and "Xbox Store." (Steenwyk Decl. Ex. 15, D.E. 21 at 268–69; Ex. 16, D.E.. 21 at 297–99.) Nowhere on those lists does Microsoft include the Xbox console itself, or any hardware product. (*Id.*) Section 14.a of the MSA, titled "Xbox," draws the same distinction: it defines "Xbox Services" to include the Xbox online service, Xbox Game Studios games, applications, subscriptions, and content. This is separate from the oft-used "Xbox consoles" terms on which those Services happen to be accessed. Steenwyk Decl. Ex. 15 § 14.a, D.E. 21 at 249; Ex. 15 § 14.a, D.E. 21 at 282. And how could "Services" encompass Microsoft's internal corporate decision to double dip? That is not a service that Microsoft provides.

Microsoft attempts to argue that the purchase of an Xbox has a "significant relationship" or "touches matters" of the MSA, and therefore the arbitration clause of the MSA is applicable. D.E. 19 at 20–21 (citing *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999)). Defendant inappropriately tries to expand the reading of *Simula* to state that an arbitration agreement can be involved if there is *any* factual overlap. Not so. If the fact that a device can run one of Microsoft's Covered Services is sufficient to sweep a tariff-profit-retention dispute into



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

the MSA's arbitration clause, then virtually any dispute about the purchase of an electronic device on the planet would be swept into the arbitration agreement. That is not what *Simula* holds, and it is not what the presumption-of-arbitrability line of cases Microsoft cites requires. *See Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1102 (9th Cir. 2023) (holding where complaint did not rely on any terms of contract to allege harm, dispute fell outside of arbitration clause). Unlike *Simula*, "resolution of all the claims" does not involve "interpreting the contract terms." *See id*. Here, the MSA's terms "cover those Microsoft consumer products, websites, related support, and services" listed as Covered Services. Plaintiff's purchase of the Xbox console does not require the interpretation of any provision of the Microsoft Services Agreement, because the MSA only covers the Covered Services. As such, Plaintiff's purchase of his Xbox does not invoke the arbitration agreement.

Microsoft also tries to argue that because a wide range of claims fall within the MSA, Plaintiff's claims should as well. However, every case Microsoft cites for the proposition that its claims fall within the MSA's scope involved a dispute about the Covered Services, not about the price of a piece of hardware. In *McCray v. Microsoft Corp.*, 2026 WL 83990, at *1 (W.D. Wash. Jan. 1, 2026), the court held claims arising from unauthorized access to the plaintiff's Hotmail account fell within the MSA's scope because Outlook, which includes Hotmail accounts, is itself a Covered Service the plaintiff's claims directly concerned. In *Mendoza v. Microsoft*, *Inc.*, 2014 WL 4540225, at *4 (W.D. Wash. 2014) and *Walsh v. Microsoft Corp.*, 2014 WL 4168479, at *3 (W.D. Wash. 2014) the disputes concerned Xbox Live account access. And in *Saeedy v. Microsoft Corp.* the claims concerned Microsoft Edge, touching use of Microsoft accounts and Bing. 757 F. Supp. 3d 1172, 1201–02 (W.D. Wash. 2024). None of these decisions holds, or even suggests, that the price a consumer pays for a console is "MSA business" merely because the consumer later uses that console to access Xbox Live. Microsoft's argument that Plaintiff



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

has "repeatedly used Xbox Live . . . to download games and manage his online account" (Mot. at 16) is beside the point. Here, the claims do not fall within the Covered Services and thus the claims are not applicable.

Fundamentally, the MSA is about services. This case is not about services. So any arbitration agreement is not broad enough to reach this dispute.

**D. Motion to Dismiss**

In a short Rule 12 motion, Microsoft contends that these claims are not well pled. D.E. 23. They are. First, Microsoft misstates the allegations in the Complaint. D.E. 23 at 9. The Complaint does not allege that the parties had a contract. It alleges merely that Microsoft's conduct was systematic. D.E. 1-1 at ¶ 44. Second, Plaintiff's claim is not that his Xbox was overpriced. His claim is that Microsoft's conduct after the sale (and in response to the tariff refunds) unjustly enriched it at his expense. These are old claims that have been around for a long time – the factual predicates for alleging them are clear and are all outlined in the operative pleading. The concerns Microsoft raises are not appropriate on a Rule 12 motion. But in the event the Court has concerns about the pleadings, Plaintiff requests the chance to amend.

**E. Standard of Review**

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the well-pled factual allegations are taken as true and all reasonable inferences are drawn in the plaintiff's favor. *Littlejohn v. Kaiser Fdn. Health Plan of Wash.*, 2024 WL 4451955, at *3 (W.D. Wash. Oct. 9, 2024). The motion must be denied if the complaint states a claim that is "plausible on its face." *Id.* (quoting, *e.g.*, *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quotations omitted)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quotations omitted).



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

**F. Unjust Enrichment**

Plaintiff conferred a monetary benefit on Microsoft by paying passed-through tariff costs included in the price of his Xbox. D.E. 1-1 at ¶¶ 4, 11, 13, 15, 36, 37, 66. Plaintiff alleges that Microsoft raised its prices due to the tariffs. D.E. 1-1 at ¶¶ 33–37. Microsoft now stands to receive a windfall from the government and from consumers' money it is keeping for those same tariffs. D.E. 1-1 at ¶¶ 40–42. The wrong here is not that Plaintiff's Xbox was nonfunctional, started smoking when he turned it on, or that Microsoft was somehow harming consumers at the time it raised its prices. The wrong is the double recovery and the enormous transfer of wealth from ordinary consumers to a corporation that has already had this particular wrongly collected expense wiped from its books and restored to it.

The claim is this case is not that Mr. Hastings overpaid for his Xbox *at the time of the purchase*. Such a claim might indeed be subject to analysis under a regulation like the Uniform Commercial Code. But this claim focuses on a later timeline. The elements of unjust enrichment are all present here. *Compare Young v. Young*, 164 Wash. 2d 477, 484–85, 191 P.3d 1258, 1262 (2008) (noting: "(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment"), *with* D.E. 1-1 at ¶¶ 37 (Plaintiff paid tariff-inflated prices to Microsoft), 43 (Plaintiff suffered economy injury caused by Microsoft's retention of tariff-related charges), and 70 (unjust for Microsoft to retain those funds). Microsoft is not a "mere incidental beneficiary" to a transaction for one of its flagship products. *Farwest Steel Corp. v. Mainline Metal Works, Inc.*, 48 Wash. App. 719, 732, 741 P.2d 58, 65 (1987). This is not a situation with subcontractors on subcontractors where the benefit of the bargain is lost in translation amidst layers of commercial dealing – this is a simple sale of a flagship product. *Cf. Shersher v. Superior Ct.*, 154 Cal. App. 4th 1491, 1500, 65 Cal. Rptr. 3d 634, 641 (2007) ("To confer a benefit, it is not essential that



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

money be paid directly to the recipient by the party seeking restitution."); *Stewart v. Beam Glob. Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 201 (D.N.J. 2012). An unjust enrichment claim is a wholly appropriate theory to redress this conduct.

Microsoft's attempt to reframe this case as a "sour grapes" complaint about overcharging is telling. D.E. 23 at 11 (noting that Plaintiff does not allege the "price he thinks he should have paid for his Xbox"). That is not what this case addresses. This case alleges Microsoft's decisions to keep the money it took from consumers after it became entitled to refunds on tariffs. The complaint expressly alleges that Microsoft passed on the costs of the tariffs to consumers. D.E. 1-1 at ¶ 36. Nor is this dispute a commentary on disappointed expectations – like that a game is not running smoothly online or that a specific Xbox has a mechanical defect. Instead, it focuses on the fact that Microsoft stands to receive a windfall at consumers' expense.

Microsoft points to 50 U.S.C. § 1702(a)(3) to suggest that it simply acted in good faith by paying tariffs at the time they were enforceable. But that statute say *nothing* about Microsoft's post-invalidation conduct. There may be statutory or equitable safe harbors for Microsoft in how it paid the tariffs, but there is no such immunity for what Microsoft did after the cows came home and the Supreme Court had said the tariffs were invalid. Microsoft's position in this case amounts to: "*Consumers are just out of luck – and we should keep the money*." That is wholly unjust. Restitution does not require that the defendant wrongfully receive the money in the first instance; it is enough that subsequent circumstances render its continued retention unjust. *Davenport v. Washington Educ. Ass'n*, 147 Wn. App. 704, 725–35 (2008). An initially lawful transfer may become unjust to retain when later events deprive that transfer of its original justification. *Id.*

Unjust enrichment is not a complicated claim. It has deep roots in notions of equity and fairness. And these facts concern a situation that is precisely consistent with that theory. Microsoft made a commercial decision to pass on costs imposed by the government to



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

consumers. Whether or not that decision was just, commercially reasonable, or good business is not at issue here. But when the government decided that its collection efforts were illegal and consequently elected to return that money – and Microsoft decided to keep it – its conduct crossed a line that equity should not tolerate. The end result here is as old as time – a corporation double recovers from consumers and the regulator, and consumers lose. So a valid claim of unjust enrichment is properly pled and should proceed.

**G. Money Had & Received**

Microsoft moves to dismiss Plaintiff's claims for money had and received "for the same reasons" it moves to dismiss Plaintiff's claims for unjust enrichment. D.E. 23 at 12. A money had and received claim was "founded on the principle that no one ought unjustly to enrich himself at the expense of another," and the "gist of the actions is that the defendant has received money which in equity and good conscience should have been paid to the plaintiff, and under such circumstances that he ought, by the ties of natural justice, to pay it over. *Seekamp v. Small*, 39 Wash. 2d 578, 584 (Wash. 1951). That is, a plaintiff "must show that the money was received in such circumstances that the possessor will give offense to equity and good conscience if permitted to retain it. *Ehsani v. McCullough Family P'ship*, 159 P.3d 407, 410 (Wash. 2007). Microsoft improperly reads *Coast Trading Co.* to improperly narrow the applicability of "money had and received claims" to "only if plaintiff's claim is based upon some recognized equitable principle such as mistake, coercion, duress, fraud, illegality of contract, impossibility of performance or failure to perform a fiduciary duty." D.E. 23 at 13 (citing *Leslie v. Fid. Nat'l Title Ins. Co.*, 598 F. Supp. 2d 1176, 1184 (W.D. Wash. 2009). In reality, *Coast Trading* stands for a broader equitable set of equitable principles and frames the ultimate question as whether defendant "holds a specific fund which it acquired in a manner which would render its retention unconscionable." *Coast Trading Co.*, 21 Wn. App. at 903. *See also Southern Natural Gas Co. v.*



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

*F.E.R.C.*, 813 F.2d 364, 367 (11th Cir. 1987) (finding in the utility company context that when a company collects fees greater than its tariff rate permits and thus receives excess payment, the company may be ordered to refund the company's customers).

Here, Plaintiff has expressly pled the existence of such a fund. Specifically, Plaintiff pleaded that Microsoft made pricing decisions in response to the tariffs and passed on the costs of the tariffs to consumers by increasing the prices on the Xbox console line D.E. 1-1 at ¶¶ 34–37. Additionally, Plaintiff alleges that Microsoft stands to benefit enormously if the tariff refunds are paid, and that Microsoft has sought refunds of the tariff payments. D.E. 1-1 at ¶¶ 10, 38. Microsoft has retained, or stands to retain, both the tariff costs it collected from its customers and the reimbursement for those costs from the government. D.E. 1-1 at ¶¶ 40–42, 79. It is no more complicated than that. The money had and received claim survives.

### H. Declaratory Judgment

Microsoft asserts that Plaintiff's claim under the Declaratory Judgment Act "merely restate Plaintiff's claims for unjust enrichment and money had and received" and thus fails. D.E. 23 at 13. Because Plaintiff's unjust enrichment and money had and received claims state a plausible claim for relief, as shown above, and an actual controversy exists as to the parties' rights with respect to the tariff refunds, the declaratory judgment claim should likewise survive. Therefore, Plaintiff's Declaratory Judgment Act claim should not be dismissed.

## III. CONCLUSION

Microsoft has filed a great deal of paper in this record, but its arguments are a thin reed. That is not a surprise, because candidly, the imposition of the IEEPA tariffs and the Supreme Court's rejection of their legality is a newsworthy progression of events. To employ a youthful expression – there is something "icky" about Microsoft's decision to keep the money it got from consumers when it stands to reap millions and potentially billions of dollars in tariff refunds



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

from the government. That cannot and should not stand, and this case should proceed. The Motions should be denied.

RESPECTFULLY SUBMITTED this 18th day of September, 2026.

*/s/ Samuel J. Strauss*
Samuel J. Strauss, WSBA No. #46971
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue - Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com

*I certify this memorandum contains 5,504 words in compliance with the Local Civil Rules of the Western District of Washington.*

J. Gerard Stranch, IV (*pro hac vice* forthcoming)
Grayson Wells (*pro hac vice* forthcoming)
Michael Tackeff(*pro hac vice* forthcoming)
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue - Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com
mtackeff@stranchlaw.com

*Counsel for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

I, Samuel J. Strauss, hereby certify that on September 18, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 18th day of September, 2026.

Respectfully submitted,

*/s/ Samuel J. Strauss*

Samuel J. Strauss, WSBA No. #46971
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue - Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com